IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 16 C 10484 |
| | ) | |
| CITGO PETROLEUM CORPORATION and | ) | Judge Alonso |
| PDV MIDWEST REFINING, LLC, | ) | |
| | ) | |
| Defendants, | ) | |

**UNOPPOSED MOTION OF THE
UNITED STATES FOR ENTRY OF CONSENT DECREE**

Plaintiff, the United States of America (the "United States"), on behalf of the United States Environmental Protection Agency ("EPA"), hereby moves this Court to sign and enter the Consent Decree that is identified as **Document Nos. 4-1 and 4-2** in the docket for this case. (Document 4-1 has the signature page for the Court.) If entered, the Consent Decree will completely resolve the claims in the Complaint filed by the United States against CITGO Petroleum Corp. and PDV Midwest Refining, LLC (collectively "CITGO").

As grounds for this Motion, the United States states:

1. On November 10, 2016, the United States filed a Complaint in this action seeking civil penalties and injunctive relief from CITGO pursuant to Sections 113(b) and 167 of the Clean Air Act ("CAA"), 42 U.S.C. §§ 7413(b) and 7477; Sections 109(c) and 113(b) of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9609(c) and 9613(b); and Section 325(b)(3) of the Emergency Planning and Community Right-To-Know Act ("EPCRA"), 42 U.S.C. § 11045(b)(3). The Complaint asserts that CITGO violated the CAA at a petroleum refinery that it owns and operates in Lemont,

Illinois (the "Lemont Refinery"). The Complaint also asserts that as a result of some of the CAA violations, CITGO violated the notification and reporting requirements of CERCLA and EPCRA.

  2. Contemporaneously with the filing of the Complaint, the United States "lodged" a proposed Consent Decree between itself and CITGO. Among other items of injunctive relief, the proposed Consent Decree requires the following at the Lemont Refinery:

- Installation of low nitrogen oxides ("NOx") burners on three heaters to reduce NOx emissions
- Continuous operation and use of a wet gas scrubber and wet electrostatic precipitator on the Lemont Refinery's fluid catalytic cracking unit with a particulate matter emission limit of 0.5 pounds of PM per 1000 pound of coke burned
- Improved operation and maintenance procedures for the Lemont Refinery's sulfur pit to reduce sulfur dioxide emissions
- New operation and maintenance procedures for all of the continuous emissions monitoring systems ("CEMS") at the Lemont Refinery
- Installation of controls on vacuum trucks that handle benzene wastes
- Flare minimization and flare efficiency relief to minimize emissions of volatile organic compounds ("VOCs") and greenhouse gases
- Implementation of an enhanced leak detection and repair ("LDAR") program to minimize VOC emissions

CITGO also will implement a $650,000 fence line monitoring Supplemental Environmental Project ("SEP") and a $350,000 "green lighting" SEP at the local school district. As a mitigation project, CITGO will control a benzene waste stream that it is not otherwise required to control at a cost of approximately $1.14 million. CITGO will pay a civil penalty of $1,955,000.

  3. The Consent Decree was "lodged" with this Court pursuant to U.S. Department of Justice regulations at 28 C.F.R. § 50.7 and Paragraph 136 of the Consent Decree in order to give the public a thirty-day opportunity to comment on the proposed Decree. Notice of the lodging of the Consent Decree was published in the Federal Register on November 17, 2016. 81 Fed. Reg. 81,157 (November 17, 2016). The United States reserved its right to withdraw or withhold its

2

consent if comments regarding the Consent Decree disclosed facts or considerations indicating that the Consent Decree was inappropriate, improper, or inadequate. Consent Decree, Paragraph 136.

5. The public comment period now has expired. No comments were received.

6. The United States sees no reason to withdraw or withhold its consent to the Consent Decree and has determined that the Consent Decree is fair, reasonable, and in the public interest. CITGO does not disagree and does not oppose entry.

7. <u>Standard of Review.</u> This Court should approve the Consent Decree. Approval of a consent decree is a judicial act that is committed to the sound discretion of the district court. *Madison County Jail Inmates v. Thompson,* 773 F.2d 834, 845 (7th Cir.1985); *see also United States v. BP Amoco Oil PLC,* 277 F.3d 1012, 1019 (8th Cir. 2002), *cert. denied,* 537 U.S. 942, 123 S.Ct. 342, 154 L.Ed.2d 249 (2002). Courts, however, should exercise this discretion in a limited and deferential manner, as the fairness of a settlement is "a matter best left to the negotiation between the parties." *Mars Steel Corp. v. Cont'l Illinois Nat'l Bank and Trust Co. of Chicago,* 834 F.2d 677, 681 (7th Cir.1987).

8. Public policy strongly favors settlements of disputes without litigation. *Donovan v. Robbins,* 752 F.2d 1170, 1177 (7th Cir.1985); *Metro. Housing Dev. Corp. v. Vill. of Arlington,* 616 F.2d 1006, 1013 (7th Cir.1980). "[T]he limitations of judicial competence and the desirability of encouraging out-of-court settlements in order to lighten the judicial caseload create a presumption in favor of approving the settlement." *Donovan,* 752 F.2d at 1177.

9. That policy is "particularly strong" for an environmental consent decree, such as the one in this case, that "has been negotiated by the Department of Justice on behalf of a federal administrative agency like EPA[,] which enjoys substantial expertise in the environmental field."

3

*United States v. Lexington-Fayette Urban Cnty. Gov't*, 591 F.3d 484, 490–91 (6th Cir.), *quoting United States v. Akzo Coatings of Am., Inc.*, 949 F.2d 1409, 1424, 1436 (6th Cir. 1991); *see United States v. George A. Whiting Paper Co.,* 644 F.3d 368, 372 (7th Cir.2011) (in reviewing a consent decree, "the trial court must defer to the expertise of the agency and to the federal policy encouraging settlement"); *United States v. Cannons Eng'g Corp.,* 899 F.2d 79, 84 (1st Cir.1990). In reviewing consent decrees, courts determine "not whether the settlement is one which the court itself might have fashioned, or considers as ideal, but whether the proposed decree is fair, reasonable, and faithful to the objectives of the governing statute." *Id.; see also Akzo Coatings,* 949 F.2d at 1435.

10. <u>Factors in reviewing a Consent Decree.</u>  In evaluating whether to approve a consent decree settlement, courts consider the following three factors: (1) fairness, both procedural and substantive, (2) reasonableness, and (3) consistency with applicable law. *George A. Whiting Paper Co.,* 644 F.3d at 372. *Accord United States v. Davis*, 261 F.3d 1, 21 (1st Cir. 2001); *Akzo Coatings*, 949 F.2d at 1424, 1426; *Cannons Eng'g*, 899 F.2d at 84 (1st Cir. 1990).

11. <u>The Consent Decree in this case is fair</u>.  As for procedural fairness, the Decree was negotiated at arms' length with substantial give and take over many months.  It was lodged for public comment.  There have been no allegations of bad faith or collusion in the negotiations. *See, e.g., United States v. BP Exploration & Oil Co.,* 167 F. Supp. 2d 1045, 1052–53 (N.D. Ind. 2001).

12. Substantive fairness concerns factors such as "the strength of the plaintiff's case, the good-faith efforts of the negotiators, the opinions of counsel, and the possible risks involved in litigation if the settlement is not approved." *Akzo Coatings*, 949 F.2d at 1435 (citation omitted).  Because these concepts do not lend themselves to "verifiable precision[,] [i]n

4

environmental cases, EPA's expertise must be given 'the benefit of the doubt when weighing substantive fairness.'" *United States v. Comunidades Unidas Contra La Contaminacion*, 204 F.3d 275, 281 (1st Cir. 2000) (quoting *Cannons*, 899 F.2d at 87).

13. The negotiators for the Parties made good faith efforts to resolve their differences without litigation. The Parties had to address many technical matters such as pollution control reliability and expected emissions limitations after the installation of new, or the improvement of existing, pollution controls. All parties were represented by experienced counsel throughout the negotiations. Counsel ultimately became satisfied with the resolution embodied in the proposed Consent Decree.

14. The alternative to this settlement is litigation that would involve complex issues, would delay expected environmental benefits, and would be resource-intensive for the litigants and this Court. Through this Consent Decree, "each side," in the words of one court, "gains the benefit of immediate resolution of the litigation and some measure of vindication for its position while foregoing the opportunity to achieve an unmitigated victory." *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985) (citing *United States v. Armour & Co.*, 402 U.S. 673, 681, 91 S. Ct. 1752, 1757 (1971)).

15. <u>The Consent Decree is reasonable</u>. The evaluation of a consent decree's reasonableness is "a multifaceted exercise." *Cannons Eng'g,* 899 F.2d at 89. Factors relevant to the evaluation of a consent decree's reasonableness include its likely efficaciousness as a vehicle for cleansing the environment; the extent to which it satisfactorily compensates the public for actual and anticipated costs of remedial and response measures; the extent to which approval of it serves the public interest; and the availability and likelihood of alternatives to the consent

5

decree. *Id.* at 89–90; *see also United States v. Fort James Operating Co.,* 313 F. Supp. 2d 902, 910 (E.D. Wis. 2004); *BP Exploration & Oil,* 167 F. Supp. 2d at 1053.

16. This Consent Decree is a vehicle for "cleansing the environment." EPA has estimated that as a result of the injunctive relief in this case, the following air pollutants will be permanently removed from the atmosphere on a "tons per year" basis:

| | |
|---|---:|
| Nitrogen Oxides | 90 |
| Sulfur Dioxide | 170 |
| Volatile Organic Compounds | 170 |
| Particulate Matter | 40 |
| Carbon Dioxide Equivalents (greenhouse gases) | 10,850 |

Consent Decree at page 3 (Whereas Clause). EPA also anticipates reductions of carbon monoxide and hazardous air pollutants. *Id.* In addition, the $1.14 million that CITGO will spend to reduce benzene emissions will further cleanse the environment.

17. These reductions alone demonstrate that the Consent Decree serves the public interest. But, in addition to these reductions, CITGO must undertake several enhancements to regulatory programs—including but not limited to minimizing potential leaks from valves, pumps, connectors, and other refinery components and minimizing the down time of emissions monitors—that will benefit the public. Moreover, the two Supplemental Environmental Projects are manifestly in the public interest. CITGO will monitor emissions at its fence line and take corrective action if trigger levels are hit. CITGO will also assist the local schools in transitioning to more energy-efficient lighting.

18. <u>The Consent Decree is consistent with the Clean Air Act</u>. This settlement is clearly consistent with the Clean Air Act. The injunctive relief articulated in Paragraph 2 of this Motion addresses and corrects the CAA violations that were alleged in the Complaint. The settlement then goes beyond securing injunctive relief for the alleged violations because it also

secures a fence line monitoring project and an energy efficiency project at local schools. In addition, it mitigates past excess emissions through the benzene emission reduction project. Finally, it provides a deterrent to future violations through the imposition of a penalty of $1,955,000.

      WHEREFORE, the United States respectfully requests this Court to sign the Consent Decree found at **Document 4-1** and enter it as a final judgment.

                                  Respectfully Submitted,

                                  JOHN C. CRUDEN
                                  Assistant Attorney General
                                  Environment and Natural Resources Division
                                  U.S. Department of Justice

                                  <u>s/ Annette M. Lang</u>
                                  ANNETTE M. LANG
                                  Senior Counsel
                                  Environmental Enforcement Section
                                  Environment & Natural Resources Division
                                  U.S. Department of Justice
                                  P.O. Box 7611
                                  Ben Franklin Station
                                  Washington, D.C. 20530
                                  (202) 514-4213
                                  (202) 616-6584 (fax)
                                  annette.lang@usdoj.gov


                                  ZACHARY T. FARDON
                                  United States Attorney
                                  Northern District of Illinois


            By:     <u>s/ Jonathan Haile</u>
                     JONATHAN HAILE
                     Assistant United States Attorney
                     219 S. Dearborn St., 5th Floor
                     Chicago, IL  60604
                     (312) 886-2055
                     jonathan.haile@usdoj.gov

OF COUNSEL:

VIRGINIA SORRELL
Air Enforcement Division
Office of Civil Enforcement
U.S. EPA
1595 Wynkoop St.
Denver, CO 80202

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 6th day of January 2017, I caused a true copy of the foregoing Unopposed Motion for Entry of Consent Decree to be served electronically (by means of an electronic email from me and not by means of this Court's electronic filing system) and by first-class mail, postage pre-paid, on the following attorney for CITGO Petroleum Corp. and PDV Midwest Refining LLC:

Anthony C. Sullivan
Barnes & Thornburg LLP
11 South Meridian St.
Indianapolis, IN 46204
tony.sullivan@BTLaw.com

                                            s/ Annette M. Lang
                                            Annette M. Lang